IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23-cr-00195 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| vs. | ) | |
| | ) | |
| MELVIN HODGE, | ) | **REPLY IN SUPPORT OF MOTION TO** |
| | ) | **SUPPRESS SEARCH OF TIMBERLINE** |
| Defendant. | ) | **TRAIL RESIDENCE AND OMEGA** |
| | ) | **AVENUE BUSINESS** |
| | ) | |
| | ) | (*ORAL HEARING REQUESTED*) |

Now comes Defendant Melvin Hodge, by and through his undersigned counsel, Marisa L. Serrat, and hereby respectfully replies to the government's response in opposition (R. 110) and moves this Honorable Court to suppress the evidence from the illegal search and seizure that occurred at 804 Timberline Trail in Northfield, Ohio ("residence") and 5450 Omega Avenue, Suite# 4 in Bedford Heights, Ohio ("business") on January 11, 2023. The Defendant further requests an evidentiary hearing and/or *Franks* hearing, currently scheduled for October 29, 2024, to present additional evidence, testimony, and argument before this Honorable Court.

Respectfully Submitted,

s/ Marisa L. Serrat
**Marisa L. Serrat (#0088840)**
Attorney for the Defendant
55 Public Square
2100 Illuminating Building
Cleveland, OH 44113
(216) 696-2150; (216) 696-1718- F
Mserratlaw@gmail.com

<u>**MEMORANDUM IN SUPPORT**</u>

**I.  ARGUMENT.**

This Honorable Court should grant Melvin Hodge's Motion to Suppress the unlawful search of his residence and business on January 11, 2023. Hodge had a legitimate expectation of privacy at 5450 Omega Ave, Unit 4. The business/storage unit was not open to the public and was secured. Hodge was the only individual that had access to the business, which is confirmed by months of law enforcement surveillance. The search warrant affidavit never established probable cause to search Hodge's Timberline Trail residence and Omega Avenue Business unit for illegal records and the Affiant never alleged any facts or conclusions in the probable cause section of the affidavit to support a search for any unlawful business records of activity. Hodge has further established the need for both an evidentiary hearing and a *Franks* hearing given the numerous false statements in the Affidavit, the reliance on unlawfully obtained information, as well as, the remainder of the allegations made herein and in Hodge's Motion to Suppress (R. 92), incorporated herein by reference. Lastly, the *Leon* good faith exception should not apply given the numerous false statements in the Affidavit and the improper reliance upon the Affiant's suspicions, beliefs, or conclusions, without providing the required underlying factual circumstances to support his beliefs.

**A. MELVIN HODGE HAD A LEGITIMATE EXPECTATION OF PRIVACY AT THE OMEGA AVE. BUSINESS UNIT.**

The government agrees that Hodge had a legitimate expectation of privacy at the Timberline Trail residence (Response, R. 110, PID 802). However, the government disputes the expectation of privacy at the Omega Ave. business storage unit, making allegations that Hodge

does not "*appear*" to be the lessee or owner of the Omega Avenue unit. *Id.*[1] The Affidavit does state that the information it obtained from the Bedford Heights building department was from January of 2013, over ten (10) years ago. (Affidavit Ex A., ¶ 70). At the hearing currently scheduled for October 29, 2024, the defense can provide limited testimony and/or documentation further showing that Hodge had a legitimate expectation of privacy in the Omega Avenue business unit if required.

In lieu of the limited testimony and/or additional documentation, the government has failed to establish that Hodge did not have a legitimate expectation of privacy in 5450 Omega Ave, Unit 4 given the facts presented. The government has not produced any documentation that it ever obtained current records about who the owner, tenant, or lessee of 5450 Omega Ave, Unit 4 was/is. The location is described by the government as a multi-unit business park. (Attachment A, R. 110-2, PID 850). During the government's months-long surveillance, the government agents/law enforcement never saw another individual access the business unit with the key or garage door remote. The agents/law enforcement never saw the business open to the public or operating as a business open to the public. Hodge told the agents on January 11, 2023 during the execution of the search warrants that he used the unit at 5450 Omega Avenue for his "personal chef/catering business." (Response, R. 110, PID 800). That is also supported by the fact that a food truck was observed at the Omega Ave. business during surveillance on November 10, 2022. (Affidavit Ex. A, ¶101). In the photographs taken during the execution of the search warrant on the Omega Ave. business, law enforcement recovered receipts for rent for the 5450 Omega Unit 4 from January 17,

---

[1] The government relies upon information in the Affidavit from Financial Investigator (FI) Kristina Hlavaty conducting an "open-source inquiry" in its response.  The defense has requested "All open-source inquiries/records regarding 5450 Omega Ave., Unit 4" and received the following response: "The agency does not possess "print outs or reports" of open-source inquiries, these are conducted online." As a result, the defense is still unaware of what records the government and/or its agents relied upon in making these allegations.

2021 through January 10, 2022. There was also a grill, generator, coolers, fridges, and other food related items located within the unit related to Hodge's food truck/catering business.

The government's reliance on *Carter* is misplaced. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998). In *Carter*, the defendants had never been to the apartment before and were only in the apartment for approximately two and a half hours. *Id.* at 86. In lieu of rent for their 2 and a half hours of use, the defendants made a payment in cocaine. *Id*. Here, the Agents had been performing surveillance of the Omega Ave. business since at least October 5, 2022 through at least December 13, 2022. (Affidavit Ex A., ¶ 67, 96, 139). Investigators were present on the property when they removed the GPS tracking device from the Ford Escape while parked in front of the unit on December 5, 2022. The government did not observe any illegal activity at the Omega Ave business during their surveillance/investigation and did not have any evidence of any illegal activity at the business. Once the unit was searched, Agents recovered a vehicle and three (3) motorcycles registered to Hodge or businesses associated with Hodge in the unit. Agents never observed any other individuals accessing the private space.

Based upon the foregoing and the additional evidence and/or limited testimony that will be established at the October 29, 2024 hearing, the government has failed to establish that Hodge did not have a reasonable expectation of privacy in 5450 Omega Ave, Unit 4., giving him standing to challenge the unlawful search of his property.

### B. THE AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH THE RESIDENCE AND BUSINESS UNIT FOR RECORDS RELATED TO DRUG TRAFFICKING.

The affidavit did not establish that Melvin Hodge had any involvement with a large-scale ongoing conspiracy to distribute and manufacture illicit drugs. There was no evidence that Hodge's residence or business was connected to any drug activity or illegal business activity. Melvin Hodge and Sherman Thomas never had a "meeting" during this investigation, as alleged by the

government. (Response, R. 110, PID 804). Sherman Thomas (or any of the other co-defendants in this case) never went to Melvin Hodge's business or residence during this investigation. There were no controlled purchases conducted with Melvin Hodge. There were no confidential sources or informants that stated that Melvin Hodge was involved in drug trafficking. There were no recorded phone calls or messages that were obtained by the government that connected Melvin Hodge to any drug trafficking activities or shipments of compression binders. The baseless accusations of the Affiant that were not supported by any actual evidence or facts and did not establish probable cause. None of Hodge's businesses had any associations with drugs or any other illegal activity. Hodge was never connected to any drug activity. The government's allegation that Hodge traveled from his residence or business before and after "suspected" drug meetings is not supported by any facts. Hodge never met with Sherman Thomas and was never involved in any conversations or meetings regarding narcotics or illegal activities. As a result, there was no connection to any drug trafficking or illegal activity occurring with Hodge or at Hodge's residence or business.

The government relies upon *Abboud* to support the search of Hodge's residence and business for records relating to an ongoing criminal scheme, however in *Abboud*, the agents were specifically investigating crimes of bank fraud, money laundering, and tax violations. *United States v. Abboud*, 438 F.3d 554, 561 (6th Cir. 2006). The government also relies upon *Hills* where the agents alleged in the affidavit an ongoing bribery and kickback scheme occurring over several years. *United States v. Hills*, 27 F.4th 1155, 1192 (6th Cir. 2022). Here, there was no such investigation or allegation regarding Hodge's business entities or business conduct. In the probable cause section of the Affidavit, the Affiant does not include any financial, fraud, money laundering, bribery, tax, or any other business-related criminal allegations in relation to any of Melvin Hodge's

business. The Affiant did not state any facts that alleged Hodge or his businesses were involved in any alleged illegal activity other than drug trafficking. As a result, the conduct alleged in the Affidavit here is clearly distinguishable from *Abboud* and *Hills*, which were business fraud related investigations, not drug trafficking investigations.

Also contrary to *Caicedo*, who was caught with 565 grams of cocaine, Hodge was never caught or in possession of any drugs during this investigation. *United States v. Caicedo*, 85 F.ed 1184, 1193 (6th Cir. 1996). In *Ellison*, a confidential informant had observed someone come out of Ellison's residence, engage in a drug transaction, and then return into the residence. *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). Here, once again, Hodge was not engaged in any drug transactions outside of his residence, or at all, during the entire investigation.

The probable-cause test requires courts to consider the totality of the circumstances in each case, so "one determination will seldom be a useful 'precedent' for" the next. *States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Here, Melvin Hodge was not a known drug dealer, did not undertake any drug deals, police did not recover drugs from any vehicle or property associated with Hodge, was never personally caught with drugs, and did not engage in any ongoing or recent drug activity. Law enforcement did not have probable cause to believe Hodge was a drug dealer who had engaged in any recent drug sales, no reliable informants had made any controlled buys from Hodge, no law enforcement officers observed Hodge engage in suspicious transactions near his home, and Hodge does have any prior related drug convictions. These were all factors relied upon in *Reed*, in consideration of the good faith exception to probable cause, which are all distinguishable from the facts here. *United States v. Reed*, 993 F.3d 441, 451 (6th Cir. 2021).

The government's summary of the facts on pages 30 through 32 of their response do not contain any facts that Hodge was involved in unlawful drug trafficking activity. (Response, R. 110, PID 810-813). Hodge and Thomas did not have a drug relationship and further did not have a drug relationship that went back over a year. The text message chat from November 19, 2021, occurred over four hundred and seventeen (417) days prior to the execution of the search warrant, making any conclusions about these statements stale. In addition, the Affiant does not provide any basis to support his conclusions or interpretations of this one conversation, or any basis to indicate that Hodge is Thomas's source of supply as a result of that conversation. Hodge and Thomas never met on September 18, 2022 or September 19, 2022. The government has the text messages between Thomas and Hodge during this time frame which does not indicate that there were any text messages between Thomas and Hodge on September 18th or 19th of 2022. (Affidavit, Ex. A., ¶ 66). There were no drug payments or exchange of drug money on September 19, 2022. There was also not one fact to establish that Hodge brought "drug cash back to his residence."

Thomas and Hodge never had a drug relationship and Thomas never received drugs from Hodge or provided money to Hodge on September 19, 2022. Thomas never communicated with Hodge about Thomas's alleged drug business. Hodge denies all conduct related to L.D. as argued herein and in the Defendant's Motion to Compel. (R. 122). The government does not have any facts to support that the contact with a phone number from Mexico makes that number a "Mexican supplier." The defense respectfully requests this Honorable Court to determine that the warrant here lacked any facts to establish probable cause to search the residence or business and grant the Defendant's Motion to Suppress.

**C. THE AFFIDAVIT CONTAINED MULTIPLE FALSE STATEMENTS, WARRANTING A *FRANKS* HEARING.**

1.  **CLAIM 1: AFFIDAVIT, PARAGRAPH 13: FALSE STATEMENTS ABOUT THE DTO.**

The Affidavit alleges in paragraph thirteen (13) that law enforcement had seized multi-pound quantities of crystal methamphetamine **intended for members of the drug trafficking organization** and that in July of 2022, investigators seized approximately 1,000 multi-colored pills pressed into various shapes from a member of the DTO, specifically stating:

> During the course of the investigation investigators have seized multi-pound quantities of crystal methamphetamine **intended for members of the DTO.** As recently as July 2022, investigators seized approximately 1,000 multi-colored pills pressed into various shapes **from a member of the DTO.**

(Def. Ex. A, ¶13)(*emphasis added*). The government cites paragraph 13 of the Affidavit as:

> 13. I am currently part of another active DEA investigation regarding the distribution of illicit narcotics involving methamphetamine pills. Members of this drug trafficking organization are obtaining large kilogram quantities of compression binder from an online retail website **During the course of the investigation investigators have seized multi-pound quantities investigators seized approximately 1,000 multi-colored pills pressed into various shapes from a member of the DTO.** The DEA North Central Laboratory analysis of these multicolored pills identified the pills contained methamphetamine. Additionally, I was informed by a DEA Supervisory Chemist that since January of 2022, other DEA offices have submitted drug exhibits of similar multicolored pills which contained methamphetamine as well as caffeine.

(Response, R. 110, PID 821)(emphasis added).  Paragraph thirteen actually states:

> **"During the course of the investigation investigators have seized multi-pound quantities** *of crystal methamphetamine intended for members of the DTO. As recently as July 2022,* **investigators seized approximately 1,000 multi-colored pills pressed into various shapes from a member of the DTO."**

The line in italics is missing from the government's block quote. In addition, as previously argued by the defense, paragraph 13 of the Affidavit must be read in conjunction with paragraphs 12 which precedes paragraph 13. In paragraph 12, the Affiant defines "DTO" as the "SHERMAN

THOMAS Drug Trafficking Organization (DTO)." (Affidavit Ex A., ¶ 70). The Affiant told the Magistrate Judge that as of July of 2022, as part of their investigation into the Sherman Thomas DTO, investigators had seized approximately 1,000 multi-colored pills pressed into various shapes **from a member of the DTO.** The Affiant also told the Magistrate Judge that they had seized multi-pound quantities of crystal methamphetamine **intended for members of the DTO.**

Contrary to the government's allegations that these two paragraphs were background information, they were included in the probable cause portion of the Affidavit and were specific allegations made about this DTO as defined by the Affiant, which was the criminal investigation into Melvin Hodge, Sherman Thomas, Carvin L. Cook and others. The inclusion of these false statements regarding the recovery of actual narcotics (multi-pound quantities of crystal methamphetamine intended for this specific DTO) and that as of July of 2022, investigators had seized 1,000 multi-colored pills pressed into various shapes from a member of the DTO was false and directly went to the Magistrate Judge's probable cause determination, warranting suppression. These statements regarding what occurred in July of 2022 in the Affidavit was made separate and apart from the allegations from the search of Sherman Thomas's residence on September 28, 2022. As a result, the inclusion of these false statements about members of this DTO in July of 2022 in the Affidavit was improper given the false nature of these statements.

## 2. CLAIM 2: AFFIDAVIT, PARAGRAPH 29: FALSE STATEMENTS REGARDING THOMAS TRAVELING TO TARGET LOCATION 1 AND TARGET LOCATION 2 IN SEPTEMBER OF 2022.

The defense argues that the false allegations contained in paragraph twenty-nine (29) of the Affidavit were not "typographical errors." The Affidavit alleges that in September of 2022, Sherman Thomas on multiple occasions traveled back and forth between Target Location 1 (804 Timberline Trail, Northfield, Ohio 44067) and Target Location 2 (5450 Omega Avenue, Suite# 4,

Bedford Heights, Ohio 44146). The inclusion of this false information was not a one-word or minor typographical error. The inclusion of this paragraph told the issuing Magistrate Judge that Sherman Thomas had been to Melvin Hodge's business and residence on multiple occasions in September of 2022. This is the only part of the Affidavit that alleges that Sherman Thomas had ever been to Hodge's residence or business and the government does not contest that this information was in fact false. The government attempts to downplay this crucial allegation as a typographical error.

Contrary to the government's allegations regarding paragraph thirty-four (34), that paragraph specifically states that those cellular phones were seized at Thomas's residence. Paragraph twenty-nine (29) never states that Target Location 1 and 2 were 5900 Father Caruso Drive and 2140 Reyburn Road. Paragraph twenty-nine (29) first references those Father Caruso and Reyburn as being the locations that Thomas allegedly picked up the package of compression binder, and then separately distinguishes that Thomas went to Hodge's residence and business multiple times of the course of the next week after Thomas picked up the compression binder on September 20, 2022. The Affidavit further does not define or distinguish bolded text from regular text. The government is making assumptions about what the magistrate judge could have possibly determined, which is contrary to the four corners of the affidavit.

This statement is false and was not simply a typographical error. The fact that the same federal magistrate judge issued all the warrants in this case does not support the government's allegation that somehow that Magistrate Judge would know that the allegations of paragraph twenty-nine (29) were false or typographical error. If the Magistrate Judge believed that that paragraph was a typographical error from the Affiant, the defense would hope that the proper corrections would be made prior to the Court's signature and execution of the warrant. The Affiant

swore to the truth of the allegations he made and there were no handwritten corrections indicating that this was a crucial typographical error regarding.

Contrary to *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005), where the court found that the typographical error was not material to the finding of probable cause. The typographical error in *Frazier* involved the date that the defendant moved out of his apartment, however the Court found that "no prejudice ensued from any errors that Agent Steward made concerning the date of Frazier's eviction because paragraph 9 makes it clear that he was not living in the Culver Court residence when the drugs were found." *Id* at 539. The false allegations regarding Sherman Thomas's direct connection to Hodge's residence and business in September of 2022 was directly related to the issue of probable cause to search these two (2) locations. Sherman Thomas never went to Hodge's residence or business and the government does not contest this. As a result, the inclusion of this incorrect information was improperly relied upon by the Magistrate Judge in the issuance of the search warrant, warranting suppression.

### 3.  CLAIM 3: AFFIDAVIT, PARAGRAPHS 88, 94 AND 95: INCLUSION OF UNRELATED L.D. CONDUCT AND PEN REGISTER INFORMATION FROM (216) 618-2000 ON OCTOBER 25, 2022.

The Affidavit relied upon Pen Register information from (216) 618-2000 (Phone #12) to allege that Melvin Hodge had seven (7) contacts with L.D.'s phone (216) 299-6130 (Phone #13) on October 25, 2022 the day of a $250,000 undercover (UC) money pick up operation of narcotics proceeds. (Def. Ex. A, ¶29). However, the pen register data provided to defense counsel from counsel for the government does not indicate that there were any contacts with (216) 299-6130 on October 25, 2022. (Def. Ex. D, Pen Register Excerpt from (216) 618-2000).

The defense renews its request for this Honorable Court to address the ongoing discovery dispute as raised in the Defendant's Motion to Compel (R. 122) regarding L.D. in the hearing currently scheduled for October 29, 2024. The defense denies the allegation that an undercover

agent picked up $250,000 in narcotics proceeds from L.D. on October 25, 2022 and further denies that Hodge had any involvement in any of the alleged activities of L.D. At this time, the defense has no additional information about this alleged conduct involving L.D., including but not limited to the time of this money transfer, what narcotics were allegedly involved, the location of this transfer, the extent of the investigation etc. In addition, Hodge did not have any communication or involvement with L.D. on November 7, 2022, as alleged in the Affidavit.

In its response, the government relies upon information obtained outside of the four corners of the Affidavit, stating: "From speaking to its DEA case agent, the government's understanding is that there was a lapse in storing or saving pen register data from Hodge's -2000 phone from October 25, 2022, which explains why the pen register data from that day did not appear in the spreadsheet provided to Hodge in discovery." (Response, R. 110, PID 826). The government agrees that the pen register data does not state that there was any contact with L.D. and Hodge's phone on October 25, 2022. The government alleges that the pen register data the agents previously saw was the same information that was included in the toll records provided in their response. However, at a minimum, the defense argues that the case Agent and Affiant should be required to provide testimony as to why the pen register data does not show any communication between L.D. and Hodge. In addition, given the lack of any connection to L.D.'s alleged conduct or the events on October 25, 2022, the Affiant never should have included these allegations in the Affidavit to search Hodge's business or residence, warranting suppression.

### 4. CLAIMS 4-7: THE AFFIANTS FALSE BELIEFS AND CONCLUSIONS WERE NOT SUPPORTED BY ANY FACTS.

On September 19, 2022, Thomas and Hodge never met at the Touch of Italy. On September 19, 2022, Agents were surveilling Thomas (who had a GPS device on his car). Surveillance was established at Belmar Road because agents were expecting compression binder to be delivered to

12

Belmar Road by UPS on September 19, 2022.[2] However, no one was at the residence so the parcels were returned to UPS. Later that date, at approximately 1:40 pm Special Agent (SA) Shawn Moses observed Thomas's vehicle in the parking lot of A Touch of Italy next to a grey Ford Escape. Thomas was seen by SA Moses entering the rear passenger door of the grey Ford Escape. The report states that Thomas sat inside the vehicle for a few minutes and then exited. TFO Lori Baker-Stella then observed Thomas leaving the area. Hodge was observed approximately twenty-five (25) minutes later looking inside of the vehicle. The report does not state that Thomas or Hodge were seen placing any items or bags inside of the vehicle or removing them from the vehicle. The report does not state that there was an allegation of a hidden compartment in the vehicle. Hodge returned to the restaurant and then left an hour later to run various errands while being followed by law enforcement TFO Santiago.

The Affiant was not present at the Touch of Italy of September 19, 2022. The Agents that were present during the surveillance (Moses, Baker-Stella, Santiago) never mentioned that they observed a money transfer or a hidden compartment in Hodge's vehicle in their report or surveillance notes. There were no messages on Thomas's recovered phone that ever established Hodge met Thomas at the Touch of Italy to conduct a drug money transfer.

The conclusions of the Affiant regarding September 18, 2022 were false. The Affiant was misleading when he used the term "a series of contacts" occurred between Thomas and Hodge the evening of September 18, 2022.  The pen register information shows that there was only one (1) short contact between (314) 699-1761 and (602) 596-8899 on September 18, 2022, not three (3),

---

[2] DEA-6 - Surveillance of Sherman THOMAS and Melvin HODGE on 9_19_22. NN40_Redacted

for 0:00:56 minutes. The government does not know the context of the 56 second conversation. In addition, the Affiant somehow concludes that:

> Based upon my training and experience and knowledge of the investigation, I believe THOMAS met up with HODGE during the early morning hours of September 19, 2022 to acquire crystal methamphetamine from HODGE in order to press methamphetamine pills which were subsequently seized by investigators on September 28, 2022 at THOMAS' residence.

(Affidavit, Ex. A, ¶63). The Affiant did not have one piece of actual evidence to support his belief that Thomas and Hodge met during the early morning hours of September 19, 2022 to acquire crystal methamphetamine. The government is correct that it had a GPS tracker of Thomas's vehicle during that time frame, and the GPS data does not show Thomas going to Melvin Hodge's residence or business on September 18th or 19th, 2022. Not one Agent saw Thomas and Hodge meet on September 18th or the early morning hours of September 19, 2022. The GPS data also does not put Hodge and Thomas in the same location on September 18th or the early morning hours of September 19, 2022. There was no evidence of any communication during "the early morning hours of September 19, 2022." The allegations from the Affiant that Hodge and Thomas met that date were not supported by any facts. The Affiant falsely included his baseless assumptions in paragraph sixth three (63) of the Affidavit without once piece of actual evidence to support his sweeping conclusions, warranting suppression.

The Affiant was further making sweeping conclusions about things he did not even observe.[3] The government stated in its response: "The government's understanding is that when DEA's pen register system shows a call duration of 0:00:00, that reflects either a missed call or a text message." (Response, R. 110, PID 830). However, the Affiant does not state that a call

---

[3] The defense renews its request for an evidentiary hearing to establish what exactly law enforcement (TFO Lori Baker-Stella, SA Shawn Moses, and TFO Santiago) observed on September 19, 2022 at the hearing scheduled for October 29, 2024.

duration of 0:00:00, that reflects either a missed call or a text message and should be required to provide testimony about his misleading statements regarding this alleged communication at the hearing scheduled for October 29, 2024.

The Affiant did not have one piece of evidence to support the allegation that Thomas entered Hodge's vehicle to place money into a hidden compartment of "trap" in Hodge's vehicle. At no point in the investigation is it mentioned how or why the Affiant believed there was a hidden compartment or "trap" in Hodge's vehicle. Once the vehicle was searched, it was confirmed by law enforcement that the Affiant was wrong and there was no hidden compartment or "trap" in Hodge's vehicle. The totality of the alleged conclusions and beliefs made by the Affiant in the Affidavit are not supported by any facts developed during the investigation, warranting suppression.

**5. CLAIM 8: AFFIDAVIT PARAGRAPH 39, 47, 55, 149: CELL SITE/LOCATION INFORMATION FOR (602) 596-8899 WAS UNLAWFULLY OBTAINED.**

As argued in the defense's Motion to Suppress the cell site/location data for (602) 596-8899, the cell site/location information for (602) 596-8899 in August and September of 2022 was unlawfully obtained. (Motion, R. 90). The defense respectfully incorporates herein by reference the arguments made in the Motion to Suppress and Reply in Support, filed instanter, contesting the legality of the inclusion of paragraphs 39, 47, 55, 149 of the Affidavit, and any other investigation that was furthered as a result of the illegal use of Hodge's cell site/location data without a warrant. (Def Ex. A, ¶39, ¶47, ¶55, ¶149).

The defense argues that the Affiant should be questioned at a *Franks* hearing about the inclusion of this location data that the Affiant knew he obtained beyond the lawful scope of his request. This inclusion of this illegally obtained cell site/location information not only warrants

suppression of the search of Hodge's business and residence as fruits of the poisonous tree, but it is also separately relevant to the defense's claim that the good faith exception should not apply to the search warrants later obtained. The Affiant knew he unlawfully obtained Hodge's location data and still included the illegally obtained information in his investigation and in the search warrant affidavits in this case, making it relevant to this Court's credibility determination of the entirety of the Affiant's conduct in this investigation.

### 6. CLAIM 9: THE AFFIDAVIT FAILED TO STATE RELEVANT INFORMATION.

Notably absent from the Affidavit in support of the search warrants was the statement that Melvin Hodge does not have any criminal history related to drug trafficking. In the one hundred and fifty-one (151) paragraphs submitted to the Magistrate Judge, not one of them included the simple statement that Melvin Hodge has no history of any such criminal conduct. The lack of any prior drug trafficking convictions for Melvin Hodge was information known to law enforcement at the time of the search warrant and should have been included in the Affidavit to the issuing Magistrate Judge for the consideration of probable cause.

### D. THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE SHOULD NOT APPLY.

The *Leon* good-faith exception should not apply given the unique facts and circumstances presented in this case. *United States v. Leon*, 468 U.S. 897, 913, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In *United States v. Leon*, the Supreme Court recognized a good-faith exception to the exclusionary rule that applies when "reliable physical evidence [is] seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate[.]" 468 U.S. 897, 913 (1984). The good-faith exception, the Court explained, is premised on the conclusion "that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the

16

substantial costs of exclusion." *Id*. at 922. *Leon* declined to go so far as to hold "that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms." *Id*. Rather, the Court recognized that exclusion's benefits outweigh its costs—and "[s]uppression therefore remains an appropriate remedy"—when a law-enforcement officer lacks "reasonable grounds for believing that the warrant was properly issued." *Id*. at 922–23. A law-enforcement officer lacks such reasonable grounds, and the good-faith exception is inapposite, in at least four situations:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006). Here, the Magistrate Judge was misled by information in an affidavit that the affiant knew was false or unlawfully obtained, as argued above and incorporated herein by reference. In addition, even though the affidavit was long, it was bare bones in the specific factual allegations against Melvin Hodge and/or the nexus of any illegal drug activity connected to Hodge and/or his residence or business.

A bare-bones affidavit is an affidavit "that states **suspicions, beliefs, or conclusions, without providing some underlying factual circumstances** regarding veracity, reliability, and basis of knowledge[.]" *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996). Put differently, a bare-bones affidavit is "a conclusory affidavit" that "**states only the affiant's belief that probable cause existed**." *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)

(quotation omitted). The Affidavit here fell well short of establishing probable cause because it lacked any actual facts connecting Hodge to any illegal drug trafficking activity. There was absolutely no reference to any drug activity conducted at the residence or business. There were no controlled buys at the business or residence. There was no confidential informant(s) that provided any information that Melvin Hodge was involved in a drug trafficking organization or was involved in the selling or importation of narcotics. The Agents never observed Melvin Hodge engage in any hand-to-hand drug or money transactions. The Agents did not have any recorded phone calls or messages about drug transactions. There were no cooperating witnesses or confidential informants that made statements that Melvin Hodge was engaged in drug trafficking. There were no controlled buys, traffic stops, or trash pulls. There were no recorded phone calls made with Melvin Hodge. The Agents never stopped, interviewed, or searched any of the individuals they observed in their surveillance talking to Melvin Hodge. The Agents did not identify any pattern of drug activity regarding Melvin Hodge during their surveillance. Melvin Hodge was never observed leaving his residence or business to perform a controlled buy or hand to hand transaction, and then returning to either his residence or business

The only connections between Hodge and alleged drug trafficking in the Affidavit were in the false statements described above, and the Affiant's unsupported "beliefs" and conclusory statements. The Affiant's beliefs were not based upon facts, and were in fact proven incorrect or false by the actual facts (for example, there was no "trap" or false compartment in Hodge's vehicle). The Affiant did not rely upon any reliable training or experience to make his suspicions, beliefs, or conclusions in the Affidavit.

The Affidavit also does not state that the Affiant consulted with an AUSA prior to the submission of this warrant to a Magistrate Judge and the defense argues that even if true, such an

18

allegation would be outside the four corners of the Affidavit and should have no impact on this Honorable Court's evaluation.

Given the complete lack of any factual information regarding any alleged illegal conduct related to Melvin Hodge and/or his residence or business and the inclusion of false and illegally obtained information in this Affidavit, the *Leon* good faith exception should not apply.

## II.      CONCLUSION.

Based upon the foregoing, Melvin Hodge respectfully moves this Honorable Court to grant his Motion to Suppress all evidence obtained as a result of the illegal searches and seizures that occurred at 804 Timberline Trail in Northfield, Ohio and 5450 Omega Avenue, Suite# 4 in Bedford Heights, Ohio on January 11, 2023. Melvin Hodge respectfully requests this Honorable Court grant this Motion to Suppress, or in the alternative, allow the defense to make additional factual and legal arguments at the oral hearing scheduled for October 29, 2024 and/or in supplemental briefing, in the interests of justice.

Respectfully Submitted,

s/ Marisa L. Serrat
**Marisa L. Serrat (#0088840)**
Attorney for the Defendant
55 Public Square
2100 Illuminating Building
Cleveland, OH 44113
(216) 696-2150; (216) 696-1718- F
Mserratlaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2024, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

s/ Marisa L. Serrat_____
**Marisa L. Serrat (#0088840)**
Attorney for the Defendant
